UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

P.G., To. G., Ti. G.,
R.M., and B.M.,

Civ. File No. 00-2273 (PAM/JGL)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Ramsey County, Anthony McWell, Ann E. Ploetz, Karen Garvin, Julie Russomanno, Judge James H. Clark, supervisors of McWell, supervisors of Ploetz, supervisors of Garvin, supervisors of Russomanno, Frayda Rosen, and Judy Daggy,

Defendants.

---

This matter is before the Court on Defendants' Motions to Dismiss, or for Summary Judgment. For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

Plaintiffs are a mother, P.G., and her four minor children. In the fall of 2000, Ramsey County instituted a child protection proceeding to terminate P.G.'s parental rights to her two youngest daughters, R.M. and B.M. P.G.'s other daughter, Ti. G., is currently also in foster care, and her son, To. G., is in a youth detention facility, having been convicted of sexually assaulting his half-sisters. The child protection proceeding began in October 2000, and Plaintiffs' Complaint in this matter was filed shortly after the first day of the hearing. Because of extenuating circumstances, the hearing was continued, and the last two days of

FILED APR 27 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD APR 27 2001
DEPUTY CLERK

the hearing were scheduled to be held on February 27, 2001, and March 1, 2001, after the Motions to Dismiss were fully briefed. There is no indication that any decision as to the termination of parental rights has yet been made.

Plaintiffs have sued nearly every person involved in the child protection proceeding. Defendant Anthony McWell ("McWell") is the Ramsey County child protection officer assigned to Plaintiffs' case. Defendant Ann Ploetz ("Ploetz") is the assistant Ramsey County attorney who instituted the child protection proceeding. Defendants Julie Russomanno ("Russomanno") and Karen Garvin ("Garvin") are, respectively, the guardian ad litem and the counsel for the guardian ad litem in the child protection proceeding. Plaintiffs have also sued unnamed supervisors of McWell, Ploetz, Russomanno, and Garvin. Judge James Clark ("Judge Clark") is the judge of the juvenile court presiding over the child protection proceeding. Dr. Frayda Rosen ("Dr. Rosen") is the psychologist who examined and treated R.M. and B.M., and Judy Daggy ("Daggy") is Ti. G.'s foster parent. Plaintiffs have also named Ramsey County as a Defendant.

Plaintiffs claim that all Defendants, save Dr. Rosen, are liable for violations of 42 U.S.C. § 1983, which prohibits persons acting under color of state law from depriving someone of their rights under the Constitution. Plaintiffs base their § 1983 claims on alleged violations of their substantive and procedural due process rights. Plaintiffs also bring a state-law claim of defamation against Dr. Rosen.

In Count I of the Complaint, Plaintiffs claim that McWell and Daggy violated their

substantive due process rights. According to the Complaint, McWell made a racist remark to P.G., and thus is acting from a racist motive, contrary to Plaintiffs' liberty interest in the parent-child relationship. Daggy allegedly refused to allow Ti. G. to attend the public school of her choice, thus violating Ti. G.'s right to the best possible education. In Count II, Plaintiffs claim that their procedural due process rights have been violated by: (1) Ramsey County's failure to provide Plaintiffs fair means of defending against the charges in the child protection proceedings; (2) Ramsey County's failure to provide access to information necessary for such defense; (3) the Ramsey County public defender's failure to provide effective assistance of counsel to P.G. in the child protection proceeding;[1] (4) the failure of the guardian ad litem and her counsel to make a reasonable investigation of the charges against P.G.; and (5) Judge Clark's denial of P.G.'s request for contact with her children without giving her fair means of getting information or contesting the charges. Finally, Count III claims that Dr. Rosen defamed P.G., R.M., and B.M. in a letter she wrote to McWell on August 2, 2000, recommending that P.G. have only supervised contact with R.M. and B.M.

As relief, each Plaintiff seeks damages of $1 million against Ramsey County, McWell, Russomanno, and Garvin, and unspecified damages of at least $25,000 against

---

[1] Plaintiffs do not bring a claim against the Ramsey County public defender. Instead, they appear to believe that Ramsey County is responsible for the acts of the public defender. As noted in Ramsey County's reply brief, however, the public defender is an institution of the State of Minnesota, and is in no way affiliated with or paid by Ramsey County.

Daggy and $100,000 against Dr. Rosen. In addition, Plaintiffs request multiple injunctions: (1) requiring Ramsey County to dismiss McWell from Plaintiffs' case; (2) requiring Ramsey County to provide Plaintiffs with the means to defend themselves against the charges in the child protection proceeding, including effective assistance of counsel not affiliated with Ramsey County, and punishing the failure to do so by directing the juvenile court to give P.G. custody of her children; (3) requiring Ramsey County to provide Plaintiffs with the means to defend themselves against the charges in the child protection proceeding, including effective assistance of counsel not affiliated with Ramsey County, and punishing the failure to do so by requiring Ploetz and her supervisors to cease prosecuting P.G. and directing them to make no further attempt to interfere with Plaintiffs' parent-child relationship; (4) requiring Ploetz, her supervisors, and Ramsey County to provide P.G., without charge, with complete information relied on as a basis for their actions and recommendations to the juvenile court; (5) requiring the juvenile court to dismiss Russomanno and Garvin from the case and to replace them with persons "not affiliated with or paid by or in any way dependent on" Ramsey County; and (6) requiring Daggy to allow Ti. G. to go to the school of her choice, unless the juvenile court determines that there is good reason for requiring her to attend another school.

Ostensibly to address defects in the Complaint raised by the Motions to Dismiss, Plaintiffs' brief states that Plaintiffs plan to file an Amended Complaint "within one week." (Pls.' Opp'n Mem. at 3.) Plaintiffs' brief was signed on February 26, 2001, and no Amended

Complaint has yet been docketed. Moreover, Plaintiffs do not acknowledge that they may not amend their Complaint as a matter of right. Because responsive pleadings have been served, Plaintiffs must seek leave of Court or consent of all Defendants to file an Amended Complaint. Fed. R. Civ. P. 15(a). Plaintiffs have not approached the Court with a request to amend,[2] nor does the docket reflect any consent by Defendants to such amendment. Thus, the Court will disregard Plaintiffs' representations about what an Amended Complaint would claim, and will instead consider only the allegations, claims, and prayers for relief made in the Complaint.

Now before the Court are four separate Motions to Dismiss. The Ramsey County defendants, consisting of Ramsey County, McWell, Ploetz, Russomanno, and their unnamed supervisors, contend that the Younger abstention doctrine applies and the Court must decline to hear Plaintiffs' claims, and that, if the Court decides not to abstain, McWell, Ploetz, and Russomanno are entitled to immunity from Plaintiffs' claims. The State defendants, consisting of Judge Clark and Garvin, also assert that the Younger abstention doctrine bars the Court from interfering in ongoing state proceedings. They argue as well that the Rooker-Feldman doctrine divests the Court of subject matter jurisdiction over Plaintiffs' challenge to a decision in a state judicial proceeding, that Judge Clark is protected by absolute judicial immunity, and that Garvin was not acting under color of state law. Daggy contends that she

[2] Given that Motions to Dismiss have been fully briefed, it is unlikely that the Court would give Plaintiffs leave to amend in any event.

is not a state actor and cannot be liable under § 1983, and that, in any event, Plaintiffs' response to her memorandum was so untimely that her Motion should be considered unopposed. Daggy asks for her attorney's fees and costs. Finally, Dr. Rosen argues that her statements are entitled to a privilege because they were made in the context of an adversarial proceeding, and that Plaintiffs have failed to plead a necessary element of their defamation claim – that she acted with actual malice. Dr. Rosen also seeks attorney's fees and costs because Plaintiffs' attorney allegedly harassed her and threatened her, and because she contends that the claims against her fail to meet the standards of Fed. R. Civ. P. 11. The Court will address each Defendant's arguments in turn.

## DISCUSSION

### A. Standard of Review

For the purposes of Defendants' Motions to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Under Fed. R. Civ. P. 12(b), a motion to dismiss can be treated as one for summary judgment and disposed of according to Rule 56 if the parties are "given reasonable

opportunity to present all material made pertinent to such a motion by Rule 56." All of the parties, including Plaintiffs, submitted matters outside the pleadings for the Court's consideration. In most instances, the Court considered the issues raised by Defendants taking all allegations in the Complaint as true, as on a Motion to Dismiss. Where, however, both Plaintiffs and Defendants used evidence outside the pleadings in their arguments, the Court views the evidence in the light most favorable to Plaintiffs to determine whether genuine issues of material fact remained to be resolved. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996); Fed. R. Civ. P. 56(c).

**B. Section 1983 Claim Against Daggy**

42 U.S.C. § 1983 prohibits persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution . . . ." Plaintiffs seek relief against Daggy under § 1983 because Daggy allegedly has refused to allow Ti. G. to attend the public school of her choice. According to Daggy, Plaintiffs' claim fails because Daggy is not acting under color of state law for the purposes of § 1983 liability, because there is no constitutional right to the best possible education, and because Plaintiffs' response to Daggy's Motion was untimely. Daggy's request for attorney's fees and costs will be addressed infra part E.

Although the Eighth Circuit has not ruled directly on the issue, it is clear that foster parents are not state actors within the meaning of § 1983. See Milburn v. Anne Arundel

County Dep't of Social Servs., 871 F.2d 474, 477 (4th Cir. 1989) (determining that foster parents are not state actors); Lintz v. Skipski, 807 F. Supp. 1299, 1306-07 (W.D. Mich. 1992) (discussing cases holding that foster parents are not state actors). "[F]or a private party to fall within the scope of § 1983 as a state actor, the State must have so far insinuated itself into a position of interdependence with the charged party that it must be recognized as a joint participant in the challenged activity . . . ." Milburn, 871 F.2d at 477. There is no such interdependence here.

Moreover, even if Daggy was considered a state actor, Plaintiffs' claim against her fails because the "right to get the best possible education" (Compl. ¶ 62) is not a right, privilege, or immunity secured by the Constitution. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected.") Plaintiffs have failed to state a claim against Daggy, and their claim against her will be dismissed.

### C. Defamation Claim Against Dr. Rosen

In Count III of the Complaint, Plaintiffs claim that Dr. Rosen "defamed, libeled and slandered" P.G., R.M., and B.M., in her August 2, 2000, letter to McWell. (Compl. ¶ 85 [sic].[3]) The Complaint does not specify precisely which statements in that letter Plaintiffs

---

[3] The paragraphs in the Complaint are misnumbered. This paragraph of Count III should be paragraph 90.

contend are defamatory. Dr. Rosen asserts that her statements were privileged, and that, in any event, there is no evidence of actual malice.

To state a claim for defamation, Plaintiffs must prove that the alleged statements were made, that the statements were communicated to someone other than Plaintiffs, that the statements were false, and that they harmed Plaintiffs' reputation. See Thompson v. Olsten Kimberly Qualitycare, Inc., 33 F. Supp.2d 806, 815 (D. Minn. 1999) (citing Ferrell v. Cross, 557 N.W.2d 560, 565 (Minn. 1997)). If all of these elements are present, the Court may nonetheless determine as a matter of law that the statements were privileged, that is, "made upon a proper occasion, from a proper motive, and . . . based upon reasonable or probable cause." Ferrell, 557 N.W.2d at 565. If the Court finds that the statements were privileged, the burden shifts to Plaintiffs to demonstrate that the privilege was abused by showing actual malice. See Thompson, 33 F. Supp.2d at 816 (citing Singleton v. Christ the Servant Evangelical Lutheran Church, 541 N.W.2d 606, 615 (Minn. Ct. App. 1996)).

Taking the allegations in the Complaint as true, and reading those allegations broadly, Plaintiffs have met their initial burden of showing the elements of defamation.[4] However, it is clear that the statements in Dr. Rosen's letter are privileged. The letter was written to McWell for the limited purpose of recommending supervised visitation, was in the context

[4] The Court will assume, for the purposes of this Motion only, that the statements complained of are false, and that they harmed the reputations of P.G., R.M., and B.M. The Court has serious doubts about whether the statements are indeed false, and whether, even if false, the statements could have harmed the reputations of the two children, R.M. and B.M.

of her examination and treatment of R.M. and B.M., and was based on that examination and treatment. "The public has a strong interest in encouraging a psychologist to accurately assess her patients. . . . Failure to recognize a privilege when information is properly released would place a heavy burden on psychologists to weigh the necessity of releasing information against the potential civil liability for doing so and would thereby deter psychologists from giving complete and accurate information . . . ." Bol v. Cole, 561 N.W.2d 143, 150 (Minn. 1997). Dr. Rosen's statements are privileged.

Plaintiffs cannot show that Dr. Rosen abused the privilege, because there is no allegation and no evidence of actual malice. Although actual malice is usually a question of fact for the jury, "summary judgment is appropriate if there is no evidence in the record from which a jury could conclude that malice was present." Thompson, 33 F. Supp.2d at 816; see also Bol, 561 N.W.2d at 150-51 (trial court did not err in granting summary judgment where evidence of malice was insufficient to create a genuine issue of material fact). Here, as in Thompson and Bol, there is simply no evidence of actual malice on Dr. Rosen's part. Plaintiffs' insinuation that perhaps Dr. Rosen was acting out of some financial conflict-of-interest borders on the outrageous. Plaintiffs' defamation claim against Dr. Rosen fails as a matter of law.

**D. Claims Against the State and County Defendants**

The State and County Defendants both contend that the Court should dismiss the

action under either the Younger abstention doctrine or the Rooker-Feldman doctrine.[5] Because the state proceedings Plaintiffs challenge are ongoing, the Rooker-Feldman doctrine may not apply to Plaintiffs' claims. None of the parties addresses whether Rooker-Feldman applies to pending state proceedings. However, because the hearing on the termination of P.G.'s parental rights concluded almost two months ago, it is likely that the juvenile court will issue an order soon. Therefore, for the sake of clarity and comprehensiveness, the Court will address the applicability of Rooker-Feldman to Plaintiffs' challenge to that anticipated juvenile court order.

### 1. Younger Abstention

In Younger v. Harris, 401 U.S. 37 (1971), and its progeny, the Supreme Court has made clear that lower federal courts must decline to hear challenges to pending state actions involving important state interests. See, e.g., Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (dismissal appropriate in light of pending attorney disciplinary proceeding); Moore v. Sims, 442 U.S. 415 (1979) (dismissal appropriate in light of pending child custody proceedings). The principles espoused in Younger are often referred to as the Younger abstention doctrine. This term, however, is somewhat of a misnomer, and can lead to confusion between the mandates of Younger and the other

[5] The County Defendants first raised the applicability of Rooker-Feldman in a letter to the Court dated April 17, 2001. Because the State Defendants briefed the issue and Plaintiffs had the opportunity to respond to that issue, there is no prejudice to Plaintiffs from the County Defendants' late submission of this argument.

prudential abstention doctrines such as that set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

In fact, one of Plaintiffs' responses to Defendants' arguments evinces precisely this confusion. Plaintiffs claim that the Court should not apply the Younger doctrine because abstention is a narrow exception to a district court's duty to hear cases before it. (Pls.' Opp'n Mem. at 14-15 (citing Colorado River, 424 U.S. at 813).) However, Younger abstention is very different from the discretionary abstention discussed in Colorado River. As the Eighth Circuit has stated, Younger abstention "directs federal courts to abstain from accepting jurisdiction in cases where . . . granting [the relief requested] would interfere with pending state proceedings" involving important state interests. Night Clubs, Inc. v. City of Fort Smith, Arkansas, 163 F.3d 475, 477 n.1 (8th Cir. 1998) (emphasis added). Thus, Younger abstention is mandatory: a federal court is required to abstain except in the extremely rare instances where bad faith, harassment, or unusual circumstances are present. See Younger, 401 U.S. at 54. In comparison, the prudential abstention doctrines such as Colorado River teach that a court should not abstain except in limited and narrow circumstances. Colorado River, 424 U.S. at 813 (prudential abstention doctrines are "extraordinary and narrow exception[s] to the duty of a District Court to adjudicate a controversy properly before it.") Thus, Plaintiffs' reliance on Colorado River abstention and cases applying that doctrine is unavailing.

The Younger doctrine applies when (1) there are ongoing state proceedings involving

the same or related matters to the federal proceeding; (2) those proceedings involve important state interests; and (3) the federal court plaintiff has an adequate opportunity to raise questions of federal law in the state proceedings. Middlesex County Ethics Comm., 457 U.S. at 432. Plaintiffs do not dispute that there is an ongoing state proceeding, in the form of the child protection proceeding currently pending in juvenile court. It is clear from the relief Plaintiffs seek that they wish this Court to directly interfere with the ongoing proceeding. Plaintiffs also do not contest that family and domestic relations are an important state interest. Instead, Plaintiffs contend only that they will be unable to raise their constitutional claims in the child protection proceeding. They offer no citation or other legal support for the proposition that the juvenile court cannot address their due process claims, likely because no such support exists. Indeed, juvenile courts in Minnesota may decide issues of federal constitutional law. See, e.g., In re Welfare of E.D.J., 502 N.W.2d 779 (Minn. 1993) (juvenile court held Fourth Amendment suppression hearing). Thus, this case is precisely the sort of case in which Younger abstention is mandated.

Plaintiffs offer other arguments against the invocation of the Younger doctrine. First, Plaintiffs represent that their Amended Complaint will not contain any requests for a change in custody or a review of the decision of the juvenile court, and thus will obviate the concerns that Plaintiffs are attempting to interfere with the ongoing child protection proceeding. (Pls.' Opp'n Mem. at 3.) However, as noted above, Plaintiffs have not filed an Amended Complaint, nor have they sought permission to do so. The Court will not presume that

Plaintiffs no longer seek the relief they request in the Amended Complaint.

Plaintiffs' final response to the Younger abstention doctrine is that abstention is inappropriate when the pending state proceedings are being used to harass or discourage the exercise of a federal right. (Pls.' Opp'n Mem. at 17.) The cases Plaintiffs cite in support of this proposition, however, are inapposite. Those cases involve abstention under Colorado River or under another discretionary abstention doctrine, Pullman abstention. See R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941). As discussed above, these prudential abstention doctrines are not analogous to Younger abstention. To the extent that Plaintiffs rely on the Younger Court's statement that an exception to abstention may be had in cases involving bad faith, harassment, or other unusual circumstances, that exception is not applicable here. Younger's bad-faith exception is extraordinarily rare, and applies only in truly exceptional circumstances, such as where the state court is clearly incompetent to adjudicate the issues by reason of bias. Gibson v. Berryhill, 411 U.S. 564, 577 (1973). Although Plaintiffs, and specifically P.G., may feel persecuted by the child protection proceeding, there is no evidence to suggest that the proceeding is so fundamentally biased or unfair as to rise to the level of Younger's bad-faith exception and to warrant federal court interference.

Younger abstention mandates that the Court dismiss Plaintiffs' claims. They can and should raise these claims in the ongoing child protection proceedings.

**2. Rooker-Feldman**

Under the Rooker-Feldman doctrine, the lower federal courts do not have subject matter jurisdiction over certain challenges to state-court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also 28 U.S.C. § 1738 (providing that state court judgments shall be given full faith and credit in federal courts). Thus, the standard of review for motions raising Rooker-Feldman issues is different from the standard for motions to dismiss noted above. Specifically, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

The State and County Defendants argue that Plaintiffs' claims must be dismissed pursuant to the Rooker-Feldman doctrine because those claims are in essence a collateral attack on the state proceeding. Under Rooker-Feldman, not only can the lower federal courts not review state court judgments, such courts do not have jurisdiction "over claims that are 'inextricably intertwined' with claims adjudicated in state court." Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999). A claim is inextricably intertwined with a state court judgment if it "succeeds only to the extent that the state court wrongly

decided the issues before it or if the relief requested . . . would effectively reverse a state court decision or void its ruling." Id. at 1035 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).

Here, it is apparent by the relief Plaintiffs seek and the arguments they make that their claims either seek review of the juvenile court judgment or are inextricably intertwined with the matter before the juvenile court. Plaintiffs seek injunctions against any decision that might take P.G.'s children away from her, and argue in support of their claims that P.G. is a fit person to have custody of her children. (Pls.' Opp'n Mem. at 19.) P.G.'s fitness to be a parent is an issue currently before the juvenile court, however, and that court's order will necessarily determine that issue. Were this Court to grant Plaintiffs the relief they request, any order issued by the juvenile court terminating P.G.'s parental rights would be voided. This is the precise effect the Rooker-Feldman doctrine is designed to prevent. Such an attack on the juvenile court's judgment must be brought before the Minnesota Court of Appeals, not in federal court. Thus, even if the Younger abstention doctrine did not apply, the Court would be bound to dismiss Plaintiffs' claims under the Rooker-Feldman doctrine.

### 3. Prosecutorial and Judicial Immunity

Although Plaintiffs' Complaint must be dismissed pursuant to either the Younger doctrine or the Rooker-Feldman doctrine, the Court is compelled to comment on Plaintiffs' claims against Ploetz and Judge Clark. There is no doubt that these Defendants are protected by absolute immunity against any claims for money damages arising out of their official

duties. Plaintiffs' decision to file suit against the prosecutor and the judge handling their case is disturbing, especially in light of the well-settled body of law giving prosecutors and judicial officers absolute immunity. See, e.g., Imbler v. Pachtman, 424 U.S. 409 (1976) (prosecutorial immunity); Bradley v. Fisher, 80 U.S. 335 (1871) (judicial immunity).

Prosecutors are absolutely immune from liability under § 1983 for their role in "initiating a prosecution and in presenting the State's case." Imbler, 424 U.S. at 431. The only allegations against Ploetz are that she unconstitutionally brought the child protection action against P.G. This claim is clearly improper, and Ploetz is entitled to absolute immunity.

The claims against Judge Clark are also improper. That judges are immune from suits for money damages has been the law of the land for 130 years. Even if a judge is alleged to act maliciously or corruptly, he is protected from claims for money damages. Bradley, 80 U.S. at 351. Only if a judge acts in "the clear absence of all jurisdiction over the subject-matter" can he be liable. Id. Again, Plaintiffs do not, and indeed cannot, claim that Judge Clark is acting in clear absence of all jurisdiction. He is a juvenile court judge, and, as such, has jurisdiction over child protection proceedings. To the extent Plaintiffs' claims against Judge Clark are for money damages, those claims are barred by the doctrine of judicial immunity.

**E. Rule 11 Sanctions and Requests for Attorney's Fees**

Daggy and Dr. Rosen request that the Court grant them their attorney's fees and costs

in defending this matter. Dr. Rosen also requests sanctions under Fed. R. Civ. P. 11 for what she contends are the harassing and threatening acts of Plaintiffs' counsel. The Court is inclined to agree that Daggy and Dr. Rosen are entitled to their fees, and upon proper motion, will consider those requests in detail. See Fed. R. Civ. P. 54(d)(2); 28 U.S.C. § 1927.

**CONCLUSION**

Plaintiffs have failed to state claims against Daggy and Dr. Rosen. Under the Younger doctrine, Plaintiffs' claims against the County and State Defendants likewise fail. Therefore, Plaintiffs' claims against all Defendants must be dismissed.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (Clerk Doc. Nos. 9, 14, 18, and 22) are **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 27, 2001

Paul A. Magnuson
United States District Court Judge